**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Virginia E. Hamm, | No. CV-16-01098-PHX-NVW |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Virginia E. Hamm seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.      BACKGROUND**

Plaintiff was born in January 1958. She has a high school education and has completed 2 years of college. She performed temporary office work and worked as an office manager from 2000 to 2004, as an office assistant in 2005, and in customer service from 2005 to 2009. She was laid off in June 2009 and continued to look for office work until October 2011.

In her application for disability insurance benefits, Plaintiff alleged numerous impairments including inability to walk on her own; inability to sit or stand for long periods due to pain in her legs; nerve damage to arms, legs, hips, and feet; lack of concentration due to medications; and chronic dry, itchy skin. Plaintiff also indicated that although she stopped working for other reasons, she believed that as of October 1, 2010 (amended to 2011) her conditions became severe enough to keep her from working. At the time of her application Plaintiff reported her height as 5'7" and weight as 248 lbs.

In March 2011 and July 2012, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning October 1, 2011. On August 15, 2014, she appeared with her attorney and testified at a video hearing before the ALJ. A vocational expert also testified. On November 20, 2014, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On April 18, 2016, Plaintiff sought review by this Court.

## II.  STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Moreover, "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Failure to do so will only be excused when necessary to avoid a manifest injustice. *Id.*

A court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining

whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, when the evidence is susceptible to more than one rational interpretation, courts must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "Overall, the standard of review is highly deferential." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015).

## III. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a severe medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014, and that she has not engaged in substantial gainful activity since October 1, 2010. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the cervical, thoracic, and lumbar spine; peripheral neuropathy; and morbid obesity. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Plaintiff:

> has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). Specifically, the claimant is able to lift 10 pounds frequently and 20 pounds occasionally; stand or walk two hours out of an eight-hour day; sit six hours out of an eight-hour day; and occasionally balance, stoop, crouch, kneel, crawl, and climb ramps or stairs. The claimant is precluded from climbing ladders, ropes, or scaffolds.

The ALJ further found that Plaintiff is capable of performing her past relevant work as a dispatcher, receptionist, data entry clerk, and customer service clerk.

## IV. ANALYSIS

### A. The ALJ Did Not Err in Weighing Medical Source Opinion Evidence.

#### 1. Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33. Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing"

reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Id.* at 830; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record). "Even if a treating physician's opinion is contradicted, the ALJ may not simply disregard it. The ALJ is required to consider the factors set out in 20 C.F.R. § 404.1527(c)(2)-(6) in determining how much weight to afford the treating physician's medical opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Lester*, 81 F.3d at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631. In deciding weight to give any medical opinion, the ALJ considers not only whether the

source has a treating or examining relationship with the claimant, but also whether the treatment or examination is related to the alleged disability, the length of the relationship, frequency of examination, supporting evidence provided by the source, and medical specialization of the source. 20 C.F.R. § 404.1527(c). Generally, more weight is given to the opinion of a specialist about medical issues related to his area of specialty than to the opinion of a source who is not a specialist. 20 C.F.R. § 404.1527(c)(5).

The ALJ may discount a physician's opinion that is based only the claimant's subjective complaints without objective evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The opinion of any physician, including that of a treating physician, need not be accepted "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). An ALJ may reject standardized, check-the-box forms that do not contain any explanation of the bases for conclusions. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Generally, more weight should be given to the opinion of a treating physician than to the opinions of physicians who do not treat the claimant, and the weight afforded a non-examining physician's opinion depends on the extent to which he provides supporting explanations for his opinions. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

The Commissioner has final responsibility for determining whether a claimant meets the statutory definition of disability, and a statement by a medical source that the claimant is "disabled" or "unable to work" is not controlling. 20 C.F.R. §§ 404.1527(d), 416.927(d). The Commissioner considers opinion evidence along with other evidence regarding the nature and severity of a claimant's impairments and a claimant's residual functional capacity, but the Commissioner does not give any special significance to the source of an opinion on such issues. *Id.* All evidence from non-examining sources is considered to be opinion evidence. 20 C.F.R. §§ 404.1527(e), 416.927(e).

### 2. Treating Physician Terry Bagley, M.D.

Dr. Bagley is board certified in physical medicine and rehabilitation electrodiagnostic medicine and began treating Plaintiff in March 2013. In April 2013, Dr. Bagley reported that MRIs showed mild degenerative changes at T5-6, L4-5, and L5-S1. Dr. Bagley's records show that in October 2013 all nerve conduction studies were within normal limits and all examined muscles showed no evidence of electrical instability. He stated: "This is a normal electrodiagnostic study with no evidence of tarsal tunnel syndrome, peroneal neuropathy, generalized peripheral neuropathy, or lumbosacral radiculopathy in the right lower extremity." In February 2014, Dr. Bagley reported an MRI of the lower spine revealed mild to moderate bilateral lateral recess narrowing at L4-5. At various times, Dr. Bagley recommended that Plaintiff walk for exercise, perform home exercises and/or water aerobics, and obtain physical therapy.

Plaintiff testified that in addition to pain in her lower extremities, she had recently developed pain at her elbows and numbness in both arms. She said that Dr. Bagley told her she had a set of nerves crossing the elbow that were shutting off feeling in the outer three fingers if she kept her elbows bent and that she might need to have surgery on both arms by the end of the year. Nevertheless, Plaintiff said that neither Dr. Bagley nor her primary care provider had referred her to a surgical specialist.

Dr. Bagley identified Plaintiff's impairments as headaches three times per month and daily chronic low back and leg pain. He said rest and medications decreased her symptoms and she did not suffer medication side effects. Dr. Bagley also said that prescribed medications caused Plaintiff headaches. Dr. Bagley opined that Plaintiff was limited to sitting for two to three hours in an eight-hour day and standing/walking less than two hours in an eight-hour day. He also found it was medically necessary for Plaintiff to alternate between sitting, standing, and walking throughout the day and to rest for ten to fifteen minutes with each position change. He opined that Plaintiff could use both hands continuously in a work setting, but could only lift and carry less than ten

pounds. Dr. Bagley opined that Plaintiff would miss more than six days of work each month due to her condition.

The ALJ gave no weight to Dr. Bagley's medical assessments dated November 4, 2013, and May 30, 2014. The ALJ also gave no weight to Dr. Bagley's opinion dated July 3, 2013, which he wrote on a prescription pad: "Pt is currently disabled secondary to her severe low back pain, hip pain, leg pain." The ALJ gave the following reasons for giving no weight to these opinions:

1. Dr. Bagley did not provide a specific function-by-function assessment of the claimant's physical functional capacity pursuant to SSR 96-8p.
2. The limitations Dr. Bagley assessed are inconsistent with his objective examinations of the claimant, which revealed generally normal to mild findings.
3. Dr. Bagley's opinion was not consistent with the medical record as a whole, particularly with mild objective diagnostic imaging and electrodiagnostic studies.
4. Dr. Bagley's opinion appeared to rely at least in part on an assessment of an impairment outside his area of expertise.

Although the November 4, 2013, and May 30, 2014 opinions assessed functional capacity, the July 3, 2013 opinion did not. Dr. Bagley's opinions are inconsistent with his office notes, test results, and the medical record as a whole. An electrodiagnostic study on June 13, 2014, indicated evidence of a moderate right cubital tunnel syndrome (ulnar nerve entrapment near or at the elbow), and Plaintiff testified on August 15, 2014, that Dr. Bagley had told her she might need surgery soon, but he had not referred her for a surgical consultation.

The reasons the ALJ gave for assigning Dr. Bagley's opinions no weight are clear, convincing, specific, and legitimate.

### 3. State Agency Non-Examining Consultants

The ALJ gave significant weight to the assessments of the State agency consultants at reconsideration. The ALJ provided the following reasons: the medical consultants had the benefit of reviewing the records, they were familiar with the requirements for determining disability pursuant to the rules and regulations of the Social Security Act, and their assessments were reasonable considering the mild electrodiagnostic findings showing ulnar neuropathy as well as Plaintiff's mild bilateral lateral recess narrowing in the lumbar spine. At reconsideration, the State agency consultants changed the initial review determination, which did not adequately consider the impact of Plaintiff's weight or mild spine disorders. The ALJ adopted essentially all of the limitations assessed by the State agency consultants at reconsideration, noting that he was giving generous consideration to Plaintiff's subjective complaints of back pain.

The ALJ did not err in giving significant weight to the assessments of the State agency consultants at reconsideration.

### B. The ALJ Provided Clear and Convincing Reasons for Discrediting Plaintiff's Symptom Testimony.

If a claimant's statements about pain or other symptoms are not substantiated by objective medical evidence, the ALJ must consider all of the evidence in the case record, including any statement by the claimant and other persons, concerning the claimant's symptoms. SSR96-7p. Then the ALJ must make a finding on the credibility of the claimant's statements about symptoms and their functional effects. *Id.*

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "This is not an easy

requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

To ensure meaningful review, the ALJ must specifically identify the testimony from a claimant the ALJ finds not to be credible and explain what evidence undermines the testimony. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014). The ALJ must make findings "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *accord Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

In making a credibility determination, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (internal quotation marks and citation omitted). But "an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Id.* Further, the claimant is not required to produce objective medical evidence of the symptom or its severity. *Garrison*, 759 F.3d at 1014. The ALJ must consider all of the evidence presented, including the claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; effectiveness and side effects of any medication taken to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the claimant uses to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.

First, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Second, the ALJ found Plaintiff's "statements regarding the intensity, persistence, and limiting effects of the

symptoms not entirely credible to the extent they are inconsistent with the residual functional capacity assessment."

Plaintiff testified that her most serious health problem affecting her ability to work is pain in her feet and hips. She said her feet hurt when she stands and her hips hurt when she walks. She said her pain is lessened by elevating her feet, which she does four or five days a week for about fifteen minutes every couple of hours. Plaintiff also testified that she experiences lower back pain that makes her dizzy and that her arms and hands cramp and get numb. She said the most she can lift is 25 pounds.

The ALJ found that Plaintiff's allegations regarding her impairments and functional limitations were inconsistent with her reported activities of daily living. Plaintiff testified that she uses a laptop computer off and on all day, totaling a couple of hours over the course of a normal day. She sometimes sits at a desk, but can sit in a chair only ten to fifteen minutes before she needs to stand up or lie down. She reported activities of daily living such as washing dishes and sweeping while using a rolling chair. She also said she goes to church every Sunday, using an electric scooter. She testified that for a period of time she looked after her husband and was available to assist him if he fell. Plaintiff testified that she babysits her grandchildren two or three times a month for a couple of hours up to an eight-hour shift. She indicated that she prepared simple meals, changed diapers, and was able to lift her grandchild who weighed about 25 pounds.

The ALJ also noted that Plaintiff's work history undermined her credibility. She testified that she stopped working in June 2009 due to a business-related layoff, not because of the allegedly disabling impairments. The ALJ found no evidence of significant deterioration in Plaintiff's medical condition since June 2009. Therefore, the ALJ inferred that if Plaintiff's medical condition did not prevent adequate work performance in June 2009, it would not prevent adequate performance of her past work. Her testimony regarding whether she looked for work after the alleged onset date, October 2011, was inconsistent.

- 11 -

Finally, the ALJ found the credibility of Plaintiff's allegations regarding the severity of her symptoms and limitations was diminished because they were greater than expected in light of the objective evidence of record. Diagnostic imaging showed normal to mild findings. Treatment records showed routine, conservative, and non-emergency treatment since the alleged onset date.

Thus, the ALJ provided specific, clear, and convincing reasons for finding Plaintiff's statements regarding the intensity, persistence, and limiting effects of her alleged symptoms not entirely credible.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 21st day of September, 2017.

_____
Neil V. Wake
Senior United States District Judge